**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SARAH MAXWELL,

Plaintiff,

vs. CASE NO.: 3:05-CV-1056-J-32MCR

THE HEALTH CENTER OF LAKE CITY, INC.

Defendant.
_________________________________/

## *AMENDED*[1] MOTION TO QUASH AND/OR MOTION FOR PROTECTIVE ORDER

COMES NOW the Plaintiff, SARAH MAXWELL, by and through his undersigned counsel, and hereby files this Motion to Quash And/Or For Protective Order, stating as follows:

Plaintiff objects to and moves to quash Defendant's subpoenas pursuant to Federal Rule of Civil Procedure 45, and/or moves for a protective order pursuant to Federal Rule of Civil Procedure 26. On April 25, 2006, Defendant served a Notice of Production from non-party, with attached subpoenas directed to the Florida Department of Corrections, CNS

[1] The undersigned is told that defense counsel has been involved in a trial and therefore could not respond earlier to the Rule 3.01(g) inquiry. This motion is amended since the parties have now held a 3.01(g) conference. This amended motion contains additional material in the 3.01(g) certification, and also contains additional argument to reflect matters discussed during the conference.

Suwanee Health Center, Shands at Lakeshore Hospital, Lake City Extended Care Center, and Robert H. Jenkins, Jr., Veterans Domiciliary Home of Florida. All of the parties that Defendant intends to subpoena are employers for whom Plaintiff was employed, prior to being employed by Defendant. The proposed subpoenas request the entire personnel file from all of these employers (the Notice of Production and attached subpoenas are attached in composite exhibit "A"). Since Plaintiff worked for all of these entities prior to working for Defendant, there could not possibly be any issue regarding interim earnings or mitigation of damages.

Furthermore, Defendant seeks the entire personnel file and matters that would go far beyond mitigation or any damages issue. Plaintiff's work performance while working for these entities is not reasonable calculated to lead to the discovery of admissible evidence, since it is so clearly inadmissible under F.R.E. 404(b), as explained below. Nor is it appropriate for the Defendant to go on a fishing expedition in an attempt to find wrongful conduct on the part of Plaintiff. Defendant may not simply use a fishing expedition to obtain evidence to support an after acquired evidence defense.

## PERFORMANCE AT OTHER JOBS IS NOT DISCOVERABLE

If Defendant is permitted to discover evidence of Plaintiff's job performance while working for previous employers, this discovery could not possibly lead to evidence admissible at trial.

This position is supported by the case law. For example, see *Sorba v. Pennsylvania Drilling Co.,* 648 F.Supp. 292, 294 (W.D. Pa. 1986),[2] which explains in pertinent part:

> Plaintiff's testimony regarding his overall job performance during his last years of his employment with defendant may provide some substantial evidence to rebut defendant's legitimate reason for the termination. Therefore, we find it relevant and allow it. Regarding evidence of subsequent job performance, we note that the quality of such performance is not necessary to show mitigation of damages, but the fact of subsequent employment is relevant. Therefore, relevant facts pertaining to subsequent employment will be admitted for the limited purpose of providing damages in mitigation thereof.

In the instant case, since Defendant has subpoenaed personnel files from employers where Plaintiff worked prior to working for Defendant, this information could not possible be related to mitigation of damages or interim earnings.

---

[2] The *Sorba* trial court was reversed in *Sorba v. Pennsylvania Drilling Co.,* 821 F.2d 200 (3d Cir. 1987). The trial court had entered a summary judgment in favor of the employer which was reversed by the Appeals Court. *Id.* However, the plaintiff in the instant case has cited the District Court opinion for a proposition that was not affected by the holding of the Appeals Court.

Also see *Rauh v. Coyne*, 744 F.Supp. 1181, 1184 (D.C. Cir. 1990) where the court discussed similar evidence, stating:

> "[T]he trial in this case, of necessity, became vastly complicated with the taking of evidence pro and con of her performance in the various jobs she held prior to and after her discharge here – and undertaking which would confuse the issues and inquiries unjustifiable expense and delay. Federal Rules of Evidence 102, 403.

Also see *Stivers v. Stevens,* 581 N.E.2d 1253, 1255 (Ind. 4th DCA 1991), which involved a claim for worker's compensation retaliatory discharge. After the plaintiff had won at trial, the defendant argued on appeal that the trial court should have admitted evidence pertaining to plaintiff's discharge by a subsequent employer. *Id.* This argument was rejected. *Id.*

For another case involving evidence of performance at a previous employer, see *Neuren v. Adduci, Mastriani, Meeks & Schill,* 43 F.3d 1507 (D.C. Cir. 1995). *Neuren* was an employment discrimination case brought by a female attorney who claimed that her termination from the defendant's law firm was based on sex discrimination. *Id.* The defendant claimed that the termination was based on legitimate business reasons, that the plaintiff had trouble meeting deadlines and difficulty in dealing with people. *Id.* At trial, the trial court admitted evidence regarding the law firm that the plaintiff had worked for prior to the defendant's law firm. *Id.* at 1510. The evidence showed that plaintiff's previous law firm had given her similar performance

evaluation, with similar criticism. *Id.* Nonetheless, the Appeals Court held that it was error for the trial court to admit the evidence. *Id.* at 1511-1512.[3] The Appeals Court held that the evidence should have been excluded under the Federal Rules of Evidence 404(b). *Id.* The evidence of plaintiff's performance at her previoius law firm created an improper inference that the plaintiff acted in conformity with this evidence while working for the defendant. *Id.* The Appeals Court also rejected the employer's argument that evidence regarding previous employment was admissible for the purpose of impeachment. *Id.* at 1512.

**TO THE EXTENT DEFENDANT ARGUES THAT CASES REGARDING ADMISSIBILITY HAVE NO BEARING ON THE QUESTION OF DISCOVERABILITY, ANY SUCH ARGUMENT SHOULD NOT BE TAKEN SERIOUSLY BY THE COURT**

In this memorandum, some of the cases cited by Plaintiff relate to the question of admissibility of trial. It cannot seriously be disputed that the question of admissibility overlaps with the question of what is discoverable, based on the clear language of Federal Rule of Civil Procedure 26(b)(1). The rule states that even if the information sought to be discovered is not admissible, it must be "reasonably calculated to lead to the discovery of **admissible** evidence." (emphasis added). Therefore, being reasonably

[3] Although the *Neuren* court that it was error to admit evidence regarding a previous employer, the Appeals Court determined that it was not reversible error due to extensive other evidence against the plaintiff that was admissible. *Id.* at 1512-1513.

calculated to lead to *inadmissible* evidence is not sufficient. Nor would it be sufficient for Defendant to reply with generic, boilerplate language regarding a distinction between admissibility and discovery since this would ignore the plain language of the rule. Rather, what matters is whether Defendant can explain how its subpoenas are reasonably calculated to lead to the discovery of *admissible* evidence. Indeed, with regard to jobs worked at prior to Defendant, the employer would be hard pressed to explain how it is even theoretically possible that its subpoenas could lead to the discovery of admissible evidence, let alone that they are "reasonably calculated" to do so.

**ANY ARGUMENT THAT PLAINTIFF LACKS STANDING TO BRING THIS MOTION SHOULD NOT BE TAKEN SERIOUSLY BY THE COURT**

In Composite Exhibit "B," there are several unpublished opinions in which the courts quashed or granted a protective order with regard to subpoenas to third parties, apparently considering the plaintiff's in those cases to have standing. Indeed, if the plaintiff has a personal interest in the material sought, this is an exception to the general rule that the plaintiff cannot object to a subpoena directed at a third party under Rule 45. For example, see *Beach vs. City of Olathe, Kansas,* 2001 U.S. Dist. LEXIS 16214, *4 (Dist. of Kan. 2001), where the Court stated:

> Applying this rule, the Court holds that Defendant Phil Major has standing to move to quash the subpoenas or otherwise object to them. He clearly has a "personal right" in his personnel file and applications for employment that would give him standing to move to quash the subpoenas.

(Internal footnote omitted).

Furthermore, this motion is not brought solely pursuant to Rule 45, since Plaintiff also seeks a protective order under Rule 26. It cannot seriously be contended that Plaintiff lacks standing. For example, see *Washington vs. Thurgood Marshall Academy,* 230 F.R.D. 18, *15 (D.D.C. 2005), where the Court stated in pertinent part:

> While Plaintiff, in her opposition to Defendant's motions, objects to Defendant's Motions to Quash Subpoenas issued to non-parties on the grounds that Defendant lacks standing, Plaintiff does not assert any grounds for standing in its own motion to quash a Rule 45 subpoena. Nevertheless, Plaintiff has also moved for a Rule 26(c) protective order, and the Court need not address the standing issue for quashing a Rule 45 subpoena. Instead, the Court will analyze this motion according to the standards applicable to Rule 26.

For an example of a case in which a court granted a protective order under Rule 26, See *Baltazar, Infra* (attached in composite Exhibit "B"). In that case, the Subpoena was directed toward the Plaintiff's current employer, which obviously would relate to mitigation of damages. Nevertheless, the court granted a protective order due to the likely prejudice that would result from alerting the employer to the lawsuit. Judge Mickle, in upholding the

magistrate's Order, therefore explained that the protective order was appropriate to avoid "annoyance, embarrassment, oppression, or undue burden or expense" under Rule 26.

In the instant case, by contrast, virtually all of the Subpoenas are directed toward employers for whom Plaintiff worked before being employed by Defendant. Therefore it does not have the same relevance with regard to mitigation of damages or interim earnings. Furthermore, Plaintiff is currently attempting to mitigate her damages by looking for a job in Lake City, which, as the Court knows, is a very small town. Aside from the strategic foolishness of alerting employers to the lawsuit and thereby making it less likely that Plaintiff will be able to successfully mitigate her damages, the likely prejudice that will result to Plaintiff is indeed a matter that is encompassed by the broad language of Rule 26.[4]

**PERSONNEL FILES FROM EMPLOYERS OTHER THAN DEFENDANT ARE INDEED PRIVATE AND CONFIDENTIAL**

There are a number of unpublished decisions from Federal District Courts in Florida in which the courts have quashed similar subpoenas based on the confidential and private nature, and based on the subpoenas being

[4] Interestingly, Defendant has recently indicated to Plaintiff that at some point in the future it intends to Subpoena documents from all of the potential employers with whom Plaintiff has sought employment (regardless of whether Plaintiff claims to have filled out a *written* application or not). Perhaps Defendant is more interested in making Plaintiff's life difficult, rather than limiting Defendant's exposure to liability by allowing her the best possible chance to successfully mitigate. This matter may be addressed in a future motion, if necessary.

overbroad. (See the opinions of *Nolan vs. City of Waldo,* Case No. 1:00-CV-179 SPM (2001); *Middleton vs. Orange Park Medical Center,* Case No. 3:00-CV-876-J-21HTS (2001); *Lopez vs. State of Florida Department of Transportation,* Case No. 3:00-CV-1188-J-21HTS (2001); and *Preston vs. American Express,* Case No. 3:00-CV-312-J-25C); *Baltazar vs. Florida State Hospital*, Case No. 4:04 CV 462-SPM/AK (N.D. Fla. 2005) (Copies of these unpublished opinions are attached in Composite Ex. "B"). In the Nolan opinion, for example, the court explained that personnel files from other employers are extremely confidential, quashed the Defendant's subpoenas, and instructed Defendant to reimburse Plaintiff for fees and costs incurred in preparing the Motion for Protective Order. *Id.*

**THE POSSIBILITY OF AN AFTER ACQUIRED EVIDENCE DEFENSE DOES NOT JUSTIFY DEFENDANT'S SUBPOENAS; AND THE U.S. SUPREME COURT HAS INDICATED THAT THIS TYPE OF DISCOVERY CONSTITUTES "ABUSE" AND IS SANCTIONABLE**

Although the Supreme Court has ruled that the after-required evidence defense under some circumstances may affect damages, this does not give defendants the right to engage in fishing expeditions against their prior employees. In *McKennon v. Nashville Banner Publishing Company,* 513 US 352, 362-363, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), the Supreme Court explained:

> Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have terminated on those grounds alone if the employer had known of it at the time of the discharge. The concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist claims under the Act is not an insubstantial one, but we think the authority of the courts to award attorney's fees, mandated under the statute, 29 U.S.C. @216(b), 626(b), and to invoke the appropriate provisions of the Federal Rules of Civil Procedure will deter most abuses.

See also *Miller v. AT & T,* 83 F.Supp. 2d 700, 760 (S.D. W.V. 2000) ("Even if the after-acquired evidence doctrine applies, it is not intended to be used as a fishing expedition by employers to find wrongful conduct on the part of their terminated employees for the purpose of limiting their damages").

For Middle District authority, see the unpublished opinion of Magistrate Corrigan in the case of *Preston v. American Express* (Case No. 3:00-CV-312-J-25TJC; attached in Ex. "B"). In that case, the Court ruled that an employment discrimination defendant may not use the after acquired evidence defense as a reason to initiate discovery. *Id.* The exception would be if a Defendant has a specific reason to believe that a Plaintiff has engaged in an activity that would support the after acquired evidence defense. *Id.* In the instant case, there are no such exceptional

circumstances, and a mere theoretical possibility is not a sufficient basis for the Defendant's subpoenas.

It is also noteworthy in this case that Defendant has not pleaded any after acquired evidence defense. (See Defendant's Answer to the Complaint). Nor is the possibility that Defendant will someday seek to plead this defense a justification for the subpoenas. *Preston, supra.*

**DEFENDANT WILL LIKELY TRY TO CONVICE THE COURT TO IGNORE *McKENNON*, BY CLAIMING THAT ITS SUBPOENAS RELATE TO ISSUES OTHER THAN THE POSSIBILITY OF AN AFTER AQUIRED EVIDENCE DEFENSE – BUT THESE GENERIC, BOILERPLATE ARGUMENTS SHOULD NOT BE TAKEN SERIOUSLY BY THE COURT**

The harsh language used by the U.S. Supreme Court in *McKennon, Supra* at 362-363, cannot be overemphasized. Indeed, the type of activity that the Supreme Court considers to be sanctionable and referred to as "abuse" is exactly what the Defendant is doing in the instant case. Since the Supreme Court has spoken on this matter, it would obviously be inappropriate for district courts to ignore the Supreme Court and allow employment discrimination Defendants to routinely engage in this type of abuse.

Moreover, if Defendants are permitted to avoid *McKennon* by making generic, boilerplate arguments regarding damages, credibility and the like, then this type of argument could be applied to virtually every

employment discrimination case and the language used by the Supreme Court would be rendered completely meaningless. Instead, the Court should consider whether there are any unusual circumstances in this case such that Defendant can engage in this activity that the U.S. Supreme Court otherwise considers to be "abuse" and sanctionable. Simply claiming that the Subpoenas might lead to information regarding credibility is a generic argument that could be applied to virtually every employment discrimination case, and it would therefore do nothing to reconcile or distinguish this case from *McKennon.*

Plaintiff also has reason to believe the Defendant will claim that its subpoenas might possibly lead to evidence regarding damages (even though virtually all of the subpoenas are directed to employers for whom Plaintiff worked before she worked for Defendant). This too is a generic boilerplate argument that can be applied to virtually any case, and that does nothing to distinguish this case from *McKennon.* Again, if employment discrimination Defendants are permitted to engage in this type of abuse by making these types of generic arguments without explaining why the circumstances are unique or distinguishable from *McKennon*, then this would have the effect of circumventing the authority of the U.S. Supreme Court.

Plaintiff respectfully asserts that, if the Court is tempted to sustain Defendant's position, then the court should address in its order the language used in *McKennon*, rather than simply ignoring what the U.S. Supreme Court has said on this topic. Specifically, the Court should explain in its order how sustaining the Defendant's position can be reconciled with the language in *McKennon*. If the Court is unable to reconcile this in a manner that makes any sense and without trivializing the Supreme Court's language in *McKennon* and rendering it meaningless, then Plaintiff respectfully asserts that Defendant's position should not be sustained. Finally, to the extent that Defendant relies upon any cases in which similar motions to quash or for protective order were denied, then the Court should consider: A-Why any such order has not followed *McKennon*; B-Whether the district court even attempted to reconcile its ruling with *McKennon*, and if so, whether the explanation makes any sense (or whether it is based on something that could be applied to every case thereby trivializing *McKennon*).

Plaintiff also believes that Defendant will argue that its Subpoenas are appropriate based on the possibility that it will discover Plaintiff had complained of discrimination at a prior employer. Again, this without more does nothing to show any uniqueness of the circumstances of this

case or to distinguish it from *McKennon*. Moreover, even if Defendant did have some reason to believe or suspect that there was a prior complaint of discrimination (which it does not), this still would not make the Subpoenas appropriate since it is not reasonably calculated to lead to admissible evidence anyway. See, *A.Cleary McCormick's Handbook of Law of Evidence* §196 pp. 466-467, 2d Ed. 1972, which states that evidence regarding litigiousness is generally excludable unless the previous claim was fraudulent. Also see, *Outley v. The City of New York,* 837 F.2d 587, 592 (2nd Cir. 1988) (evidence of litigiousness is excludable under Rule 403 and 404(b)). *Union Carbide Corp. v. Montell,* 28 F. Supp. 2d 833, 838 (S.D.N.Y. 1998) (same).

**3.01(g) CERTIFICATION**

Pursuant to Local Rule 3.01(g), the undersigned hereby certifies that he has contacted opposing counsel in writing (on April 27, 2006). Counsel spoke with each other by telephone on May 9, 2006. However, the parties were not able to informally resolve this matter.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an Order Quashing Defendant's Subpoenas and granting Plaintiff's Motion for Protective Order; instructing Defendant to notify the third parties that they need not comply with the subpoenas; or to the

extent the documents have already been produced, instructing the Defendant not to view the documents and to return them.

Respectfully submitted,

MAGID & WILLIAMS, P.A.
3100 University Boulevard South
Suite 115
Jacksonville, Florida 32216
(904) 725-6161

/s/ P. Daniel Williams
P. Daniel Williams
Florida Bar No. 0036625
Leonard S. Magid
Florida Bar No. 0717101
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed Plaintiff Sarah Maxwell's *Amended* Motion to Quash and/or Motion for Protective Order with the Clerk of the Court on Thursday, May 10, 2006, using the CM/ECF system which will send a notice of electronic filing to the following:

Weston F. Smith, Esquire
Deacon & Moulds, P.A.
100 2nd Avenue South, Ste. 902 S
St. Petersburg, FL 33701

/s/ P. Daniel Williams
Attorney